UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RONALD LAMONT DAVIS,

Plaintiff,

v.

HEIDI E. WASHINGTON et al.,

Defendants.

Case No. 1:25-cv-880

Honorable Paul L. Maloney

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court will grant Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendant Washington. The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants Bush, Dirschell, Rewerts, Garcia, and Blount: official capacity claims for monetary relief, First Amendment free exercise claim against Defendant Dirschell in his individual capacity, Eighth Amendment claims, and Fourteenth Amendment equal protection claim. Plaintiff's First Amendment free exercise

individual capacity claims against Defendants Bush, Rewerts, Garcia, and Blount, First Amendment free exercise official capacity claims against Defendants Bush, Dirschell, Rewerts, Garcia, and Blount, and First Amendment retaliation claim against Defendant Blount remain in the case.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Carson City Correctional Facility (DRF) in Carson City, Montcalm County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues MDOC Director Heidi E. Washington, MDOC Deputy Director and Correctional Facilities Administrator Jeremy Bush, and MDOC Special Activities Coordinator (SAC) Adrian Dirschell. (Compl., ECF No. 1, PageID.2–3.) Plaintiff also sues the following DRF staff: Warden Randee Rewerts, Deputy Warden Jason Garcia, and Chaplain Lonnie Blount. (*Id.*, PageID.3–4.) Plaintiff sues Defendants in their individual and official capacities. (*Id.*, PageID.3, 5.)

Plaintiff is a practicing Orthodox Muslim who believes that he is commanded by Allah to observe communal Jumu'ah (Friday) worship during the time prescribed for midday prayer. PageID.5.)

On April 17, 2025, Plaintiff was transferred to DRF and sent a kite to Defendant Blount requesting to be placed on the list for Al-Islam service callouts. (*Id.*, PageID.6.) On April 20, 2025, Plaintiff learned that the Jumu'ah service was to be held at 8:55 a.m., rather than midday. (*Id.*) Plaintiff spoke with Defendant Blount on April 25, 2025. (*Id.*) During that conversation, Plaintiff told Defendant Blount that he was happy to be transferred to a location closer to family because his mom was in poor health. (*Id.*) When Plaintiff expressed his dissatisfaction with the timing of the Jumu'ah service, Defendant Blount told Plaintiff, "[T]hat's your problem, not mines [sic]

because the time is not going to be changed and if you keep pressing the issue, you will find yourself back up north!" (*Id.*)

On April 25, 2025, and April 29, 2025, Plaintiff sent letters to Defendants Washington, Bush, Rewerts, Garcia, and Blount regarding the timing of the Jumu'ah service and the ability of other religious groups to attend their own worship services. (*Id.*, PageID.8–10.) It appears that either Plaintiff's requests were denied or that Plaintiff did not receive any response. Plaintiff filed a grievance against these Defendants on May 1, 2025. (*Id.*, PageID.11.)

On May 2, 2025, Plaintiff provided Defendant Blount with a CSJ-997 "Offender Religious Accommodation Request," seeking an accommodation to attend Jumu'ah service during the time prescribed for midday prayer. (*Id.*, PageID.11.) The timing of the Jumu'ah service was not changed. (*Id.*)

Plaintiff claims that, as a result of Defendants refusal to change the timing of the Jumu'ah service for level 2 prisoners, he suffers from fear and anxiety (*id.*, PageID.14), depression, headaches, fatigue, loss of sleep and appetite, shortness of breath (*id.*, PageID.15), nightmares, and high blood pressure (*id.*, PageID.16).

Plaintiff brings the following causes of action: (1) "RLUIPA" (*id.*, PageID.23); (2) "Free Exercise Clause of the First Amendment" (*id.*, PageID.24); (3) "Retaliation, First Amendment Violation" (*id.*, PageID.26); (4) "Deliberate Indifference a[n] Eighth Amendment Violation" (*id.*, PageID.29); and (5)"Fourteenth Amendment (Equal Protection Clause)" (*id.*, PageID.1).[1] He seeks declaratory, injunctive, and monetary relief.

---

[1] Because Plaintiff specifically identifies the claims that he intends to bring in this suit, the Court does not construe Plaintiff's complaint to raise any other claims.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

**A. Official Capacity Claims**

Plaintiff sues Defendants in their official and individual capacities. A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity; in this case, the MDOC. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity, or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Moreover, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66); *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013).

Here, Plaintiff seeks monetary damages. However, as noted above, the MDOC is not a "person" who may be sued under § 1983 for money damages. Similarly, Plaintiff may not seek monetary damages against Defendants in their official capacities. *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are "persons" under § 1983."). Therefore, the Court will dismiss Plaintiff's official capacity claims for money damages.

Plaintiff also seeks injunctive and declaratory relief. Although damages claims against official capacity defendants are properly dismissed, an official capacity action seeking injunctive

or declaratory relief constitutes an exception to sovereign immunity. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985) (citing *Ex parte Young*, 209 U.S. 123, 159–60 (1908)). The *Ex parte Young* doctrine "rests on the premise—less delicately called a 'fiction'—that when a federal court commands a state official to do nothing more than refrain from violating federal law, he is not the State for sovereign immunity purposes." *Va. Ofc. for Prot. and Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (internal citation omitted.) The Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)).

Because Plaintiff seeks prospective injunctive and declaratory relief addressing alleged ongoing violations with respect to interference with Plaintiff's religious exercise, Plaintiff's official capacity claims for injunctive and declaratory will be addressed in connection with the substance of Plaintiff's § 1983 claims.

**B. Claims Against Defendant Washington**

Plaintiff faults Defendant Washington for failing to act upon Plaintiff's April 29, 2025, correspondence. (Compl., ECF No. 1, PageID.10.) Plaintiff alleges that he sent correspondence to Defendant Washington and others discussing the timing of the Jumu'ah service but that the issue was not corrected. Plaintiff's factual allegations against Defendant Washington, even accepted as true, do not state a § 1983 claim.

In his complaint, Plaintiff references MDOC Policy Directive 05.03.150, which governs "Religious Beliefs and Practices of Prisoners."[2] Sections 05.03.150.JJ–MM indicate that both the

[2] Plaintiff relies upon and references MDOC policy in his allegations. Although the policy directive is not attached to the complaint, the Court may consider it even at this early stage of the

Chaplain and the Special Activities Coordinator (SAC) play roles in deciding requests for religious accommodation. MDOC Policy Directive 05.03.150.LL–MM (eff. Mar. 26, 2025). However, Plaintiff has not alleged any *facts* that would plausibly suggest that Defendant Washington, as MDOC Director, played any role in deciding Plaintiff's religious requests under MDOC policy or otherwise.

To the extent that Plaintiff seeks to hold Defendant Washington liable in her supervisory role, he may not do so. Government officials, such as Defendant Washington, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit has summarized the minimum required to constitute active conduct by a supervisory official:

---

proceedings because it is "referred to in the complaint and [is] central to the plaintiff's claim or [because it is a] matter[] of public record." *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1002 (6th Cir. 2024) (internal quotation marks and citations omitted).

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976), and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Plaintiff has not alleged facts that would demonstrate that Defendant Washington knowingly authorized or acquiesced in the decision to deny Plaintiff's requested accommodation. Instead, Plaintiff faults Defendant Washington for not expressing her disagreement with how other Defendants were performing their jobs. This alleged failure to act, without more, does not give rise to liability under Section 1983. *See Grinter*, 532 F.3d at 576; *Shehee*, 199 F.3d at 300. Accordingly, the Court will dismiss Plaintiff's claims against Defendant Washington.

### C. Claims Against Defendants Bush, Dirschell, Rewerts, Garcia, and Blount

#### 1. First Amendment Free Exercise Claims

The First Amendment provides "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof . . ." U.S. Const. amend I. The right to freely exercise one's religion falls within the fundamental concept of liberty under the Fourteenth Amendment. *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Accordingly, state legislatures and those acting on behalf of a state are "as incompetent as Congress" to interfere with the right. *Id.*

While "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights," inmates clearly retain the First Amendment protection to freely exercise their religion. *See O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (citations omitted). To establish that this right has been violated, Plaintiff must establish (1) that the belief or practice he seeks to protect is religious within his own "scheme of things," (2) that his belief is sincerely held, and (3) that Defendant's behavior infringes upon this practice or belief. *Kent v. Johnson*, 821 F.2d 1220, 1224–25 (6th Cir. 1987); *see also Flagner v. Wilkinson*, 241 F.3d 475, 481 (6th Cir. 2001) (same); *Bakr v. Johnson*, 121 F.3d 707 (6th Cir. 1997) (noting that "sincerely held religious beliefs require accommodation by prison officials").

**a. Defendant Dirschell**

Plaintiff alleges that Defendant Dirschell "has the authority to approve the plaintiff's request for the accommodation of the DRF Al-Islam Jumu'ah (Friday) service to be held within its Islamically mandated time frame of the zuhr (mid-day) prayer" (Compl., ECF No. 1, PageID.3); however, Plaintiff does not allege that he ever submitted a request to Defendant Dirschell (*see id.*, PageID.8, 10) or that Defendant Dirschell otherwise played any role with respect to Plaintiff's request for an accommodation. Indeed, Plaintiff does not mention Defendant Dirschell within the factual allegations of his complaint.

With respect to Plaintiff's claims against Defendant Dirschell in his individual capacity for monetary relief,[3] the Court notes that it is a basic pleading essential that a plaintiff attribute factual

[3] The Court will address Plaintiff's claims for injunctive relief against Defendants in their official capacities only. *See* C*mty. Mental Health Servs. of Belmont v. Mental Health & Recovery Bd. Serving Belmont, Harrison & Monroe Ctys.*, 150 F. App'x 389, 401 (6th Cir. 2005) ("Just as a plaintiff cannot sue a defendant in his official capacity for money damages, a plaintiff should not be able to sue a defendant in his individual capacity for an injunction in situations in which the injunction relates only to the official's job, i.e., his official capacity.")); *Greenawalt v. Ind. Dep't*

allegations to particular defendants. *See Twombly*, 550 U.S. at 545 (holding that, to state a claim, a plaintiff must make sufficient allegations to give a defendant fair notice of the claim). The Sixth Circuit "has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate what each defendant did to violate the asserted constitutional right." *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008) (citing *Terrance v. Northville Reg'l Psych. Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002)). Where a person is named as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing the plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, 238 F.3d 421 (6th Cir. 2000) (citing *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)) (requiring allegations of personal involvement against each defendant); *Rodriguez v. Jabe*, 904 F.2d 708 (6th Cir. 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."). Plaintiff's allegations against Defendant Dirschell fall far short of the minimal pleading standards under Fed. R. Civ. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief"). For that reason alone, Plaintiff's individual capacity claims against Defendant Dirschell are properly dismissed.

However, Plaintiff also brings claims against Defendant Dirschell in his official capacity for injunctive and declaratory relief which, as discussed above, are not barred by sovereign

---

*of Corr.*, 397 F.3d 587, 589 (7th Cir. 2005) ("[S]ection 1983 does not permit injunctive relief against state officials sued in their individual as distinct from their official capacity.")

immunity. The *Ex parte Young* doctrine allows actions for injunctive and declaratory relief against the official "actively involved in administering the alleged violation." *See McNeil v. Cmty. Probation Srvc. LLC*, 945 F. 3d 991, 995 (6th Cir. 2019) (quoting *Doe v. DeWine*, 910 F. 3d 842, 849 (6th Cir. 2018)). Because MDOC policy provides that "the SAC shall make a final determination on a religious accommodation request, MDOC Policy Directive 05.03.150.MM, the Court will allow Plaintiff to proceed with his First Amendment free exercise claim for injunctive and declaratory relief against Defendant Dirschell in his official capacity.

**b. Defendants Bush, Rewerts, Garcia, and Blount**

Plaintiff claims that Defendants Bush, Rewerts, Garcia, and Blount violated Plaintiff's First Amendment right to free exercise of religion in refusing to change the time of the Jumu'ah service. Taking Plaintiff's allegations as true as is required at this stage of the litigation, and without the benefit of any information regarding the purpose behind the scheduling of Friday religious services, the Court will allow Plaintiff to proceed with his First Amendment claims against Defendants Bush, Rewerts, Garcia, and Blount.

**2. RLUIPA Claims**

Plaintiff also brings claims against Defendants under RLUIPA. RLUIPA, 42 U.S.C. § 2000cc-1(a), provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to [a prison] . . . unless the government demonstrates that imposition of the burden on that person: (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Id.*; *see also Haight v. Thompson*, 763 F.3d 554, 559–60 (6th Cir. 2014).

RLUIPA creates a burden-shifting framework for assessing prisoner claims. A prisoner bears the initial burden to show (1) his desired religious exercise is motivated by a "sincerely held religious belief" and (2) the government is substantially burdening that religious exercise. *Cavin*

*v. Mich. Dep't of Corr.*, 927 F.3d 455, 458 (6th Cir. 2019); *see also Ackerman v. Washington*, 16 F.4th 170, 179 (6th Cir. 2021) (citation omitted). "If the prisoner successfully shows the state substantially burdens a sincere religious belief, the burden shifts to the government to justify the burden on the religious adherent under the 'daunting compelling interest and least-restrictive-means test,' with a slight twist." *Ackerman*, 16 F.4th at 179 (quoting *Cavin*, 927 F.3d at 458). Courts must give "due deference to the experience and expertise of prison and jail administrators in establishing necessary regulations and procedures to maintain good order, security and discipline, consistent with consideration of costs and limited resources." *Cutter v. Wilkinson*, 544 U.S. 709, 723 (2005).

However, RLUIPA does not create a cause of action against an individual in that individual's personal capacity. *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 331 (5th Cir. 2009), *aff'd, Sossamon v. Texas*, 563 U.S. 277 (2011); *see also Grayson v. Schuler*, 666 F.3d 450, 451 (7th Cir. 2012) ("[RLUIPA] does not create a cause of action against state employees in their personal capacity.");[4] *Washington v. Gonyea*, 731 F.3d 143, 145 (2d Cir. 2013) ("RLUIPA does not provide a cause of action against state officials in their individual capacities . . . .").[5] Therefore,

[4] The Supreme Court granted certiorari only on the question "Whether an individual may sue a State or state official in his official capacity for damages for violation of" RLUIPA. *Sossamon v. Texas*, 560 U.S. 923 (2010). Thus, the Supreme Court left undisturbed and unreviewed the Fifth Circuit's holding that "RLUIPA does not create a cause of action against defendants in their individual capacities." *Sossamon*, 560 F.3d at 331.

[5] In *Haight*, the Sixth Circuit analyzed whether Congress's spending power permitted a RLUIPA damages claim against an individual prison official in the official's personal capacity. The court rested its determination that such claims were not permitted on its conclusion that "appropriate relief" under RLUIPA was not a sufficiently clear statement to authorize such a damages claim. *Haight*, 763 F.3d at 567–69. The court stopped short of adopting the reasoning that swayed the Fifth Circuit in *Sossamon* and subsequent federal circuit court panels. *Haight*, however, did not squarely present the issue whether a personal capacity suit for injunctive or declaratory relief might be available.

Plaintiff's RLUIPA claims against Defendants in their respective individual capacities are properly dismissed.

RLUIPA also does not permit damages claims against prison officials in their official capacities. As discussed above, a suit against an individual in his official capacity is equivalent to a suit brought against the governmental entity. *See Will*, 491 U.S. at 71. In *Sossamon*, the Supreme Court held that the RLUIPA did not abrogate sovereign immunity under the Eleventh Amendment. *Sossamon*, 560 F.3d 277; *see also Cardinal v. Metrish*, 564 F.3d 794, 801 (6th Cir. 2009) ("[T]he Eleventh Amendment bars plaintiff's claim for monetary relief under RLUIPA."). Therefore, although the statute permits the recovery of "appropriate relief against a government," 42 U.S.C. § 2000cc-2(a), monetary damages are not available under RLUIPA.

That leaves only a RLUIPA claim for injunctive relief against Defendants in their official capacities. *See Ex parte Young*, 209 U.S. at 159–60. The Court finds that Plaintiff has alleged sufficient facts to state such a claim against Defendants Bush, Dirschell, Rewerts, Garcia, and Blount in their official capacities at this stage of the proceedings.

**3. First Amendment Retaliation Claims**

Plaintiff alleges that Defendant Blount threatened to have Plaintiff transferred "back up north" after Plaintiff raised his complaint regarding the timing of the Jumu'ah service. (Compl., ECF No. 1, PageID.27.) Plaintiff alleges that this threat followed Plaintiff's discussion with Defendant Blount regarding the benefits of his having been transferred to DRF being "back down state and close to his mother," who was in poor health. (*Id.*, PageID.7.)

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a

person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to show that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Here, taking Plaintiff's factual allegations as true, the Court finds that Plaintiff has alleged sufficient facts to state a claim for First Amendment retaliation against Defendant Blount.

**4. Eighth Amendment Claims**

As support for his Eighth Amendment claims, Plaintiff alleges that he "is incarcerated under conditions that are posing a substantial risk of serious harm i.e. eternal damnation in the Hellfires." (Compl., ECF No. 1, PageID.29.) He also alleges that Defendants were deliberately indifferent to Plaintiff's mental and physical harm (*id.*, PageID.30), which Plaintiff describes as fear and anxiety (*id.*, PageID.14), depression, headaches, fatigue, loss of sleep and appetite, shortness of breath (*id.*, PageID.15), nightmares, and high blood pressure (*id.*, PageID.16).

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant

experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). Consequently, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

For a prisoner to prevail on an Eighth Amendment claim concerning conditions of confinement, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.

While Plaintiff may have personal concerns regarding his spiritual well-being, those concerns are appropriately addressed in connection with Plaintiff's First Amendment free exercise claims. Plaintiff's concerns about the fate of his soul in the afterlife do not plausibly suggest that Plaintiff has been denied the "minimal civilized measure of life's necessities" such as food,

medical care, or sanitation, or that the conditions under which Plaintiff are confined pose a substantial risk of serious harm to Plaintiff's health or safety while incarcerated.

Plaintiff also alleges that his fear of eternal damnation has caused him to suffer from a host of additional health concerns (*see* Compl., ECF No. 1, PageID.14–16). The Court will liberally construe these allegations as raising Eighth Amendment claims concerning a lack of medical care.

The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976); *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001). Like a conditions-of-confinement claim, a claim for the deprivation of adequate medical care under the Eighth Amendment has an objective and a subjective component. *Farmer*, 511 U.S. at 834. To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips*, 534 F.3d at 539–40.

Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize

to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty*., 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted), *abrogation on other grounds recognized by Lawler as next friend of Lawler v. Hardiman Cnty., Tenn.*, 93 F.4th 919 (6th Cir. 2024).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence. . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

Plaintiff alleges that he suffers from fear, anxiety, depression, headaches, fatigue, loss of sleep and appetite, shortness of breath, nightmares, and high blood pressure. Many of these conditions, such as fear, headaches, fatigue, loss of sleep and appetite, and nightmares, are routine symptoms that do not obviously demand professional medical attention and, therefore, do not constitute objectively serious medical conditions. *See, e.g., Williams v. Coleman*, No. 23-646, 2023 WL 4861740, at *5 (W.D. Mich. July 31, 2023) ("Headaches typically [are a condition] for which

an inmate may seek relief, but for which professional medical treatment is not required."). Plaintiff's complaint also does not contain any facts from which the Court could infer that Plaintiff's high blood pressure, shortness of breath, anxiety, and depression are serious medical needs within the meaning of the Eighth Amendment. Plaintiff's complaint does not indicate his blood pressure levels, how long Plaintiff's blood pressure was elevated, or the ill effects, if any, that Plaintiff's elevated blood pressure and shortness of breath would have if left untreated. *See, e.g., Harris v. Cnty. of Shiawassee*, No. 11-cv-10318, 2012 WL 2526929 (E.D. Mich. June 28, 2012) ("[h]igh blood pressure is not a condition where the need for medical care is readily discernable to a layman."). And, while severe mental anxiety and depression or an anxiety or depressive disorder could amount to a serious medical need, Plaintiff's references to "anxiety" and "depression" alone, without more, do not plausibly suggest a medical need posing a substantial risk of serious harm.

Moreover, even if Plaintiff had alleged facts to show an objectively serious medical need, he has not satisfied the subjective prong of the deliberate indifference test. Plaintiff has not alleged facts that would plausibly suggest that the named Defendants, who Plaintiff alleges are responsible for religious accommodations, played any role in the provision of Plaintiff's healthcare. Indeed, Plaintiff has not alleged that he has even communicated these health conditions to any of the named Defendants. Therefore, for each of the foregoing reasons, the Court will dismiss Plaintiff's Eighth Amendment claims.

**D. Fourteenth Amendment Equal Protection Claims**

Lastly, Plaintiff alleges that he was deprived of "equal protection." (Compl., ECF No. 1, PageID.1.) The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City*

*of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To state an equal protection claim, Plaintiff must plead facts to show "intentional and arbitrary discrimination" by the state; that is, he must show that he "has been intentionally treated differently from others similarly situated." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006). Further, "'[s]imilarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015) (quoting *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011)).

Plaintiff's complaint contains no facts or allegations to support his equal protection claim. He claims only that "the DRF Administration is allowing other religious groups the right to practice their religious worship practices" (Compl., ECF No. 1, PageID.9); however, Plaintiff fails to provide the Court with any facts regarding these "other religious groups" or their "worship practices," much less facts that would show that the groups and practices are similarly situated to Plaintiff in all relevant respects but treated differently. Instead, Plaintiff's allegations of discriminatory treatment are wholly conclusory, which, again, fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555. Accordingly, Plaintiff's equal protection claim will be dismissed.

## **Conclusion**

The Court will grant Plaintiff leave to proceed *in forma pauperis*. Having conducted the review required by the PLRA, the Court determines that Defendant Washington will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will also dismiss, for failure to state a claim, the following claims against the remaining Defendants Bush, Dirschell, Rewerts, Garcia, and Blount: official capacity claims for monetary relief, First Amendment free exercise claim against Defendant Dirschell in his individual capacity,

Eighth Amendment claims, and Fourteenth Amendment equal protection claims. Plaintiff's First Amendment free exercise individual capacity claims against Defendants Bush, Rewerts, Garcia, and Blount, First Amendment free exercise official capacity claims against Defendants Bush, Dirschell, Rewerts, Garcia, and Blount, and First Amendment retaliation claim against Defendant Blount remain in the case.

An order consistent with this opinion will be entered.

Dated: September 23, 2025

/s/ Paul L. Maloney
Paul L. Maloney
United States District Judge